Robinson vs. Woodson et al.

---

## ROBINSON VS. WOODSON, ET AL.

1. EVIDENCE: *Must be confined to the pleadings.*
   Where there is no plea of payment, proof of it is not admissable.

2. SAME: *Not admissable against admission of pleading.*
   If a defendant would introduce proof contrary to the admissions of his answer, he must first apply for leave to amend it, and accompany the application with his affidavit that the admission was made by mistake or inadvertance.

3. VENDOR'S LIEN: *When waived.*
   A vendor executed a deed, expressly reserving a lien on the land for the purchase money, and afterwards executed a second deed to the same vendee, acknowledging payment of the purchase price, when, in fact, it was *not* paid. Held, that the lien in the first deed was a contract lien like a mortgage, which was in effect conveyed to the vendee by execution of the second deed, and under the second the vendor had the same equitable lien as if the first had never been made.

APPEAL from *Jefferson* Circuit Court in Chancery.
Hon. J. A. WILLIAMS, Circuit Judge.
*Bell* and *N. T. White*, for appellant.
*H. Carlton*, contra.

ENGLISH, CH. J. :

The bill in this case was filed in the Jefferson Circuit Court, by J. Alexander Woodson against David A. Robinson, to enforce a vendor's lien for purchase money of Lots 3 and 4, in Block 4, Drew White's Addition to the City of Pine Bluff, sold and conveyed by Woodson to Robinson, February 20th, 1873, for $900, of which $500 was paid in cash, and a note executed by Robinson to Woodson for $450, payable 1st of February, 1874, with interest at 10 per cent.

Before the hearing the court permitted the bill to be amended so as to make Virginius D. Wilkins, who held the note as collateral security for money, etc., advanced by him to Woodson, a co-complainant, and a decree was rendered for his use for the amount of the note, and the lots condemned to be sold for its satisfaction, from which Robinson appealed.

I. It was proven that the note sued on, at the time of its execution, or within a few days after, was placed in the hands of Wilkins by Woodson, as collateral security for a debt which the latter owed the former, and for money advanced upon it, and that he held the note continuously from that time to the commencement of the suit. Upon these facts, Wilkins might have brought the bill to enforce the lien, and made Woodson, as well as Robinson, defendants ( *Crawly* v. *Riggs et al.*, 24 Ark., 563) ; or he might have joined in the bill as co-complainant with Woodson when it was filed, as he was permitted to do by amendment before the hearing. *Reynolds, Adm'r, et al.* v. *West*, 32 Ark., 244.

The appellant was not prejudiced by the allowance of the amendment making Wilkins a party.

II. Appellant does not allege in his answer that he had paid the note, or deny the allegation of the bill that it had not been paid. On the contrary, he states that he had " always been ready to comply with his part of the contract, and to pay said money if said note was cancelled."

In his deposition he swore that he had paid the note in money to Woodson in March or April, 1873, long before it was due, and further on he swore that he had paid it to Woodson in County scrip.

Woodson swore that the note had not been paid to him in money or scrip, and Wilkins swore that appellant promised him to pay the note after its maturity. Both Wilkins and Woodson deposed that at the time the note was placed in the hands of Wilkins as collateral security, appellant was notified of it.

There was no allegation in appellant's answer on which he could predicate proof of payment of the note before suit.

If after the sworn answer was filed, he desired to make proof that he had paid the note before suit, he should have applied to the court for leave to amend his answer and accompanied the application by affidavit that the admission in the answer of his willingness to pay the debt was made by mistake or inadvertance in the drafting of the answer. *Reynolds, Adm'r, et al.* v. *West*, 32 Ark., 249.

There is some confusion in the depositions about the note sued on, and one deposited for keeping in the safe of August Blum, but it is not necessary to attempt to clear up this confusion. The preponderance of the evidence is that appellant did not pay the note sued on, and the court so found.

III. The defense made by appellant's answer was that Woodson had waived his lien on the lots for the unpaid purchase money.

It appears that at the time of the sale of the lots, Woodson made appellant a deed, reserving a lien on its face for the payment of the note for balance of purchase money, which deed was not recorded, and a few days after he made him a second deed, acknowledging the payment of the purchase money, and making no reference to the note for $400, which was recorded.

Appellant relied upon the execution of the second deed as a waiver of Woodson's lien upon the lots for the payment of the note. The object of executing the second deed seems to have been that it might not appear upon the public records that appellant was indebted to Woodson for the lots, and hence the first deed showing the indebtedness was not recorded, and the second deed which did not show it, was recorded.

By the first deed, Woodson conveyed title to the lots to appellant, reserving in the face of the deed a lien for the payment of the note for balance of purchase money, which was a contract lien, and like a mortgage. This lien was all the interest which Woodson had in the lots after the execution of the first deed. By the second deed, this interest was in effect conveyed to appellant—that is, Woodson divested himself of the contract lien which he had reserved upon the lots by the first deed. After the execution of the second deed he had no contract lien upon the lots. But he had just such lien, and no other, as he would have had if the first deed had not been made, and he had in the outset executed to appellant a deed acknowledging the payment of the purchase money, when in fact $400 of the purchase money had not been paid, which is an equitable vendor's lien—that is, a lien which does not depend upon stipulation or contract, but is the creature of a court of equity (*Swan* v. *Benson*, 31 Ark., 729), and based upon a principle founded in morals and good conscience, that the vendee should not be permitted to keep the vendor's land and not pay for it.

Appellant swears that Woodson intended, by the execution of the second deed to waive and abandon all lien upon the lots, but Woodson swears to the contrary. We have stated above the legal effect of the execution of the second deed, and if the conflicting oaths of the parties be regarded as of equal value and balancing each other, just such effect should be given

to the execution of the second deed as the law attaches to it. Decree affirmed.